IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-579 |
| | ) | |
| Plaintiff, | ) | JUDGE: JOHN ADAMS |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION AND MOTION FOR ORDER GRANTING DEFENDANT'S RELEASE** |
| | ) | |
| | ) | |
| CHRIS JOHNSON, | ) | |
| Defendant. | ) | |
| | ) | |

Now comes the Defendant, Chris Johnson, by and through undersigned counsel, Sydney Strickland Saffold, Esq., and respectfully moves this Honorable Court, to reconsider the Order of Detention for Mr. Johnson and for an order granting his immediate pre-trial release because of the special circumstances that exist in the face of the COVID-19 pandemic. A memorandum in support of this motion is attached hereto and hereby incorporated by reference.

Respectfully submitted,

*/s/ Sydney Strickland Saffold*
Supreme Court No. 0093974
1220 West Sixth Street, Suite 303
Cleveland, Ohio 44113
Phone: (216) 622-2700
Fax:    (216) 622-2714
Email: sydneysaffold@gmail.com

*Attorney for Defendant Chris Johnson*

CERTIFICATE OF SERVICE

A copy of the foregoing *Motion to Continue* was filed electronically this 25th day of February, 2020, to the United States Attorney, Office of the U.S. Attorney, at Carl B. Stokes U.S. Courthouse, Cleveland, Ohio 44113-1830.

Respectfully submitted,

*/s/ Sydney Strickland Saffold*
Supreme Court No. 0093974
1220 West Sixth Street, Suite 303
Cleveland, Ohio 44113
Phone: (216) 622-2700
Fax:    (216) 622-2714
Email: sydneysaffold@gmail.com

*Attorney for Defendant Chris Johnson*

**Introduction**

Defendant moves the Court to reconsider his order of detention and for an order granting his release. Chris Johnson, who is a pretrial defendant currently detained at the Northeast Ohio Correctional Center ("CCA") in Youngstown, Ohio, is within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, through the State of Ohio, and within prison populations. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Chris Johnson, because he is incarcerated and given the conditions at the CCA, as described in detail below, necessitates his temporary release on bail until this pandemic has ended. Mr. Johnson is willing to comply with any pretrial release conditions this Court believes would be necessary to assure his appearance as well as adequately protect the public.

**Factual Background**

*Changed Circumstances: COVID-19 Outbreak*

As of March 25, 2020, the new strain of coronavirus which causes COVID-19, has infected over 438,100 people throughout the United , leading to at least 19,641deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] The CDC has issued guidance that individuals at higher risk of contracting COVID-19—adults over 60 years old and people with chronic medical conditions such as lung disease, heart disease, and diabetes—take immediate preventative actions, including avoiding

---

1 *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 25, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
2 *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020)

crowded areas and staying home as much as possible.[3]  With confirmed cases the State of Ohio that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

*Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[4]  Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[5]  Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[6] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[7]  In China, officials have confirmed the

---

*at* https://bit.ly/2W8dwpS.
3 *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.
4 Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.
5 Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf
6 "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.
7 *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[8]  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[9]  Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[10]  Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners.[11]

### The Bail Reform Act Requires Chris Johnson's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  The circumstances that existed when Chris Johnson was ordered detained have now changed.  There is a pandemic that poses a direct risk to Chris Johnson that is far greater if he continues to be detained during this public health crisis.

Chris Johnson is vulnerable because he is detained, and statistics have begun to demonstrate every demographic is as at risk as the next.  As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial."  *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)

---

[8] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.
[9] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.
[10] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.
[11] Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at*

(quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). *See also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *United*

---

https://theappeal.org/sentenced-to-covid-19/.

*States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Chris Johnson will yield, relative to the heightened health risks posed to Chris Johnson during this rapidly encroaching pandemic. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

**<u>Conditions of Release Are Available That Allow Chris Johnson To Be Treated Humanely While Also Ameliorating Any Danger To The Community</u>**

From Chris Johnson's perspective his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. His criminal record was a factor that led to the decision to detain him in the case before this Court.

Critically, during this temporary release, Chris Johnson will not be left to his own devices, but will be supported and monitored by Pretrial Services. Since 2009, Pretrial Services'

data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[12]  In the Eastern District of New York, Chief U.S. Pretrial Services Officer Roberto Cordeiro reports that in Fiscal Year 2019, only six of 1,300 defendants (0.5%) under Pretrial Services' supervision failed to appear in court; only 2.8% were rearrested.  The elderly and chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

## Conclusion

Chris Johnson is among the vulnerable population at heightened risk of getting very sick from this illness.  For all of the above reasons, Chris Johnson should be granted release on bond.


Respectfully submitted,

*/s/ Sydney Strickland Saffold*
Supreme Court No. 0093974
1220 West Sixth Street, Suite 303
Cleveland, Ohio 44113
Phone: (216) 622-2700
Fax:    (216) 622-2714
Email: sydneysaffold@gmail.com

*Attorney for Defendant Chris Johnson*

---

[12] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.